The Hon. James L. Robart

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR17-235-JLR |
| Plaintiff, | |
| | GOVERNMENT'S SENTENCING MEMORANDUM |
| v. | |
| PAUL D. LAMARCHE, | |
| Defendant. | |

Comes now the United States of America, by and through Annette L. Hayes, United States Attorney for the Western District of Washington, and Stephen Hobbs, Special Assistant United States Attorney for said District, and files this Government's Sentencing Memorandum.

## I.   OVERVIEW

Paul D. LaMarche has pled guilty to the *Wire Fraud*, 18 U.S.C. §1343, and *Theft of Government Property*, 18 U.S.C. §641, as set forth in the Indictment. LaMarche has admitted that he received disability benefit overpayments in the amount of $177,369.26 over a period of years from the Railroad Retirement Board. During this period, LaMarche failed to comply with the minimal reporting requirements that would have allowed the Railroad Board to investigate whether he was entitled to continue to receive a disability

*United States v. LaMarche*, CR17-235-JLR
Government's Sentencing Memorandum - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

annuity. When given an opportunity to tell the truth, LaMarche repeatedly lied about his disability and self-employment status. Finally, LaMarche benefited financially over a period of years from this fraud, while growing his business and living an enviable lifestyle. The United States respectfully requests that the Court impose a total sentence of fifteen (15) months imprisonment and three (3) years of supervised release.

## II.   FACTUAL SUMMARY

### A.   LaMarche's Railroad Disability Annuity and Reporting Requirements.

Paul D. LaMarche was employed by Burlington Northern as Brakeman-Conductor since at least 1974. On June 5, 1988, LaMarche claimed he could no longer work due to herniated C-3 disc and inoperable lower strained back.[1] LaMarche applied for a disability annuity in 1992, and has been receiving a disability annuity since August 1993 from the Railroad Retirement Board (RRB). The total estimated annuity payments LaMarche has received since that time is $541,682.18.[2]

When he applied for a disability annuity, LaMarche was repeatedly told that he had to inform the RRB if: (1) his medical condition improved, (2) if he was employed, or (3) if his income exceed a certain amount.[3] LaMarche was sent yearly reminders of these requirements. The forms mailed to LaMarche explicitly stated his reporting obligations:

---

[1] Exhibit C (LaMarche Application for Determination of Employee Disability).

[2] LaMarche began receiving a disability annuity from the RRB in August of 1993. Payments continued through October of 2016. At that point, LaMarche turned 66 years old and the disability annuity ended and he began to receive RRB pension payments (not the subject of this litigation). *See* Exhibit B (Summary of Annuity Payments to LaMarche).

[3] See Exhibit D (Employee Disability Benefits, Chapter 21); Exhibit E: (Application for Employee Annuity); and Exhibit F (Service Employee Annuity, Part IV).

Pursuant to Title 45 USC Section 231a(e) (and Public Law No: 109-478, Railroad Retirement Disability Earnings Act), an individual receiving a disability annuity is restricted to earning not more than a certain limited amount. This amount has increased over the period of LaMarche's disability claim, starting at $400.00 monthly ($4,999.99 annually) and rising to $910.00 monthly ($11,375.00 annually). The Railroad Retirement Act requires any individual receiving a RRB disability annuity to report all work activity regardless of earnings.

*United States v. LaMarche*, CR17-235-JLR
Government's Sentencing Memorandum - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

> "You MUST notify the Board: IF you perform ANY work (including self-employment)… You MUST return your annuity payment for any month: Your earnings exceed $400 after deduction of disability related work expenses regardless of your employer…. Failure to report any event that may affect your entitlement to an annuity may constitute a criminal violation…"

Exhibit G (RRB Form "RL-4, Disability Reminder Notices") (capitalization in original).

LaMarche has acknowledged knowing that he was required to report his medical condition and his income to the RRB.[4] Indeed, in 1994, LaMarche reported an improvement in his medical condition to the RRB. For the next twenty-one years, however, LaMarche he made no such report, nor did he report any income from his ongoing business enterprise until confronted by investigators in 2015.

**B.     LaMarche's Business: Emerald City Charters**

From 1984 to the present, LaMarche owned a corporation called Emerald City Charters.[5] This is a charter sailboat operation operating on Puget Sound, and elsewhere, during the tourist season. Through this business, LaMarche owns two large sea-going sailboats ("Obsession" and Neptune's Car").[6] LaMarche's ownership of this business is not in dispute. Interviews with employees establish that LaMarche was directly involved with business operations during the summer sailing season. In video promotions, LaMarche boasts of only missing a couple of days work in 23 years. Exhibit X. Until confronted by investigators in 2015, LaMarche never informed the RRB that he owned Emerald City Charters, nor did he report any income from this business.[7]

---

[4] See Plea Agreement, ¶ 7(c); Exhibit M (Emerald City Charter Incorporation documents).

[5] Plea Agreement, ¶ 7(c).

[6] Exhibit T.

[7] Since 2010, LaMarche also owns a 33-percent share in another business, Ballard Sails and Yacht Services. In 2010, LaMarche briefly owned a business called Threshold Gear.

In order to operate a charter boat business, LaMarche was required to submit the following forms to the United States Coast Guard: "Application for License as Officer, Operator or Staff Officer", "Sea Service Form (Small Boat Experience)", and "Merchant Marine Personnel Physical Examination Report". Exhibits N & O. Since 1993, LaMarche has submitted these documents to the Coast Guard every five years, doing so under penalty of perjury.

The principle purpose of the Merchant Marine Personnel Physical Examination is "to determine if an applicant is physically capable of performing shipboard duties," and "to ensure that the applicant's physical is conducted by a duly licensed physician/ physician assistant and to verify information as needed." In completing the Merchant Marine Physical Examination Report, LaMarche repeatedly told the United States Coast Guard, under penalty of perjury, that he was not physically incapacitated:

| 1994 | ---- |
|------|------|
| 1999 | "No significant medical history" |
| 2004 | "No impaired range of motion. No impaired balance/coordination" |
| 2009 | "No impaired range of motion. No impaired balance/coordination" |
| 2014 | "No medical conditions" |

Exhibit O (sample Coast Guard documents).

In submitting the "Sea Service Form (Small Boat Experience)", LaMarche reported multiple days per year operating his charter sail boats. LaMarche reported the following days at sea, certifying that the activity was during the "summer" season, with an average of "4 hours underway" per day:

| Year | "Obsession" | "Neptune's Car" |
|------|-------------|-----------------|
| 1994 | 82 days | -- |
| 1995 | 146 days | -- |

*United States v. LaMarche*, CR17-235-JLR
Government's Sentencing Memorandum - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| 1996 | 177 days | -- |
|------|----------|-----|
| 1997 | 160 days | -- |
| 1998 | 158 days | -- |
| 1999 | 89 days | -- |
| 2000 | 99 days | -- |
| 2001 | 97 days | -- |
| 2002 | 96 days | -- |
| 2003 | 97 days | -- |
| 2004 | 94 days | 70 days |
| 2005 | 96 days | 76 days |
| 2006 | 100 days | 76 days |
| 2007 | 92 days | 70 days |
| 2008 | 80 days | 69 days |
| 2009 | 74 days | 52 days |
| 2010 | 81 days | 57 days |
| 2011 | 83 days | 59 days |
| 2012 | 80 days | 54 days |
| 2013 | 84 days | 58 days |

Exhibit N (summary and sample Coast Guard documents).

**C.    LaMarche's False Statements to the RRB**

In 2015, an RRB investigator learned that LaMarche owned Emerald City Charters. The RRB then sent LaMarche the following questionnaires: "Continuing Disability Report" (Exhibit H), "Self-Employment and Substantial Service Questionnaire" (Exhibit J), and "Self- Employment/ Corporate Officer Work and Earnings Monitoring" (Exhibit K). At the same time, LaMarche was provided with forms reminding him of his reporting obligations. Exhibit I ("Employee Annuities: Events That Must Be Reported").

*United States v. LaMarche*, CR17-235-JLR
Government's Sentencing Memorandum - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

These forms were sent to LaMarche on March 15, 2015. They were returned by him to the RRB on March 18, 2015. The forms covered the period from November 1, 1991, through the date the form was completed. In completing these questionnaires, LaMarche lied repeatedly about his medical status, ability to work, and income.

LaMarche's responses to the "RRB Continuing Disability Report" include:

a. Section 1 - General Instructions, the following warning is included; "If you are an employee, your annuity cannot be paid for any month in which you earn over $850.00. Please notify the nearest office of the RRB if your earnings exceed $850.00 a month."

b. "Have you worked for an employer (railroad or non-railroad) during the period to present?" **LaMarche stated "no."** (Section 3, Question 6)

c. LaMarche indicated self-employment through the business "Emerald City Charters," P.O. Box 3187, Seattle, WA 98103. (Section 4, Question 15)

d. In response to provide monthly self employment income for each month, **LaMarche indicated "0" for gross income and "0" for net income.** (Question 15g)

e. LaMarche indicated that prior to the period in Section One (11/01/1991 to "present"), he was involved in the business from "1984 – 1988 operated as hobby business." (Question 15i)

f. "Describe the duties you perform on an average work day." **LaMarche responded "since injury & disability business has been operated by a general manager, employee. Manage books, answer question to manager no more than 1 hour monthly."** (Question 15k)

g. "Describe what your assistant(s) does to help you," LaMarche indicated **"Is general manager. Performs all duties of management. Hires employees, schedules work, manages all maintenance."** (Question 16e)

h. "Explain why you need additional help," LaMarche indicated **"Due to injury, unable to perform duties."** (Question 16j)

i. "Have you made management decisions during the period to present," **LaMarche stated "no."** (Question 17b)

*United States v. LaMarche*, CR17-235-JLR
Government's Sentencing Memorandum - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

j.  "Describe the type of management decisions you made, how much time you spent making them, and any changes that have taken place," LaMarche **responded "Only advise as needed. All decisions made by General Manager."** (Question 17b)

k.  "Describe your present medical condition" LaMarche stated "Inoperable herniated disc high in neck, C2." (Section 5, Question 26a)

l.  "Describe any change (better or worse) in your condition, if any, during the period to present**," LaMarche stated "Little or no change, debilitating headaches daily."** (Question 26b)

m.  In response to question 26c, "Does your condition prevent you from working now," **LaMarche indicated "yes."** (Question 26c)

n.  "Has your doctor restricted your activities," **LaMarche indicated "yes."** (Question 29a)

o.  "Describe the restriction(s)," LaMarche stated **"No lifting, pulling, carrying heavy items, no running or jumping."** (Question 29b)

p.  LaMarche certified that he understood that civil and criminal penalties may be imposed for false or fraudulent statements, or for withholding information to misrepresent a fact or facts material to determining a right to benefits under the Railroad Retirement Act. (Section 7, Question 36)

q.  LaMarche further acknowledged that the information provided is true, complete, and correct.

r.  Finally, LaMarche certified that he received U.S. RRB application booklets, RB-1d, Employee Disability Benefits and RB-9, Employee and Spouse Events That Must Be Reported and that he understood he is responsible reporting changes in events that would affect his annuity.

Exhibit H (emphasis in bold added). The answers in bold above are untrue.

LaMarche's responses to the "RRB Self-Employment and Substantial Service Questionnaire" include:

a.  LaMarche indicated he was self-employed by "Emerald City Charters, Inc." (Section 3, Question7a)

b.  Under question 8a, LaMarche stated his job title as "Officer of Corporation." (Question 8a)

*United States v. LaMarche*, CR17-235-JLR
Government's Sentencing Memorandum - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

c. In response to question Sb, "Describe the service you perform and the skill level required," **LaMarche stated "none."** (Question 5b)

d. In response to question 11, "Where do you perform your service," **LaMarche stated "home."** (Question 11)

e. In response to question 13, LaMarche indicated that the date he began performing his service as "05/01/1984." (Question 13)

f. "Enter a monthly breakdown of the amount of time you spent in this employment **this** year, **LaMarche stated one day for each of the following months; May, June, July, August, and September.** (Section 4, Question 20)

g. In response to question 21, "Enter a monthly breakdown of the amount of time you spent in this employment **last** year," **LaMarche stated one day for each of the following months; May, June July, August, and September.** (Question 21)

h. "Enter a breakdown of your net earnings after deduction of allowable business expenses under each month of this employment performed **this** year," **LaMarche stated "0" for all months.** (Section 5, Question 22

i. "Enter a breakdown of your net earnings after deduction of allowable business expenses under each month of this employment performed **last** year," **LaMarche stated "0" for all months.** (Question 23)

j. LaMarche certified that all the information, provided by him in completing the form, was true and correct to the best of his knowledge. LaMarche further certified that he was aware that if he made a false or fraudulent statement on the form or that if he refused to provide information in order to obtain benefits not authorized by law, he would be committing a crime which is punishable under federal law by fine or imprisonment or both. (Section 7).

Exhibit J (bold emphasis added). Again, the answers in bold provided by LaMarche are untrue.

LaMarche's responses to the "Self-Employment/ Corporate Officer Work and Earnings Monitoring" include:

a. LaMarche indicates involvement with "Emerald City Charters, Inc.," … LaMarche describes the business as "Tourist charter boat and sailing."  In response to a request to "Enter gross wages or a

monthly breakdown of your net earnings after deduction of allowable business expenses under each month of this employment performed in... ,” **LaMarche indicated "0" for all months.** (Section 3, Question 12a & 12b)

b.   “Did you receive any other income, payments, or reimbursements from Emerald City Charters, Inc. **"LaMarche responded "no."** LaMarche neglected to respond further to any other questions in this section, until question 21a, “Have you received income from the business since your change in work activities.” **LaMarche responded "no."** (Section 4, Question 16a)

c.   “Enter the date of incorporation and the end date if applicable,” LaMarche indicated “04/23/1991.” (Section 5, Question 24b)

d.   “Provide the following information to identify the corporate officers at the time of incorporation,” LaMarche identified himself as president with a salary of “0” and Mary LaMarche, wife, as both the secretary and treasurer with a salary of “0.” “Has there been a change in your work activities since incorporation,” LaMarche responded ”yes” with a date of “06/08/1988.” (Question 27, 29a)

e.   LaMarche certified that he submitted all requested information and that he knew that making a false, misleading, or fraudulent statement in order to receive benefits from the RRB is a crime which is punishable under Federal law. LaMarche further certified that the information provided to the RRB on the questionnaire is true to the best of his knowledge. (Section 8)

Exhibit K (emphasis in bold added). Again, LaMarche’s answers (in bold) are not true.

**D.   LaMarche’s Letter to the RRB.**

When he returned the forms described in the previous section, LaMarche also submitted a letter to the RRB. This letter is contains false statements about his medical status and his involvement with Emerald City Charters.

In the letter, LaMarche states that he “started a sailing tourist business” in “May 1984.” LaMarche further states that: “I was told I could continue my sailing business by using managers. This business has continued to operate with a general manager, who hires and trains all employees and maintains vessel. Due to my injuries, sailing is restricted to steering only in light air, **so I am unable to work on the boat**. **My  only**

*United States v. LaMarche*, CR17-235-JLR
Government’s Sentencing Memorandum - 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**duties are checking bank statements and advising general manager if needed**." Finally, LaMarche stated that "not until I received these forms and looked up the information, did I realize that may be doing something wrong. I thought my settlement allowed me to do this." Exhibit L (emphasis in bold added).

**E.    LaMarche's First Interview with USAO Civil Division Investigators.**

LaMarche was interviewed by investigators for the Civil Division of the United States Attorney's Office for the Western District of Washington on July 26, 2017. This interview was not recorded. A summary of key comments during this interview is as follows:

    a.    He applied for the disability annuity through the RRB Bellevue Office.

    b.    When he applied for the disability annuity he was told he could own a business so long as it was operated by a General Manager, that he was told the work restriction did not apply to him, and that it "didn't matter" if he owned a business.

    c.    The GM of Emerald City Charters was Ted Collier. LaMarche claimed he only advised the business and only went out sailing "every once in a while." He claimed he could not pull lines or do other physical labor. He stated he went sailing once a week in the summer.

    d.    LaMarche claimed all profits are rolled back into Emerald City Charters. He acknowledged that he possessed an Emerald City Charters debit card but denied using it for personal expenses.

    e.    He only served as an advisor to Ballard Sails and Yacht Services, Inc., never received any compensation, and as of 2015 was no longer associated with the business.

Exhibit T.

**F.    LaMarche's Second Interview with USAO Civil Division Investigators.**

LaMarche was again interviewed by RRB investigators and investigators with the Civil Division of the United States Attorney's Office for the Western District of Washington on January 24, 2017. A summary of key comments during this interview is as follows:

a. LaMarche owned Emerald City Charters before he was injured and claimed disability.

b. LaMarche stated he was telling the Coast Guard "the truth about the number of days he was working on the boat and what he was doing." He "may not have been telling the railroad the truth." (p. 43).

c. There is further acknowledgment that he had not been telling the railroad the truth: "Q. So then it flips the other way. So then a lot of the stuff you told us, same thing, false statements. LaMarche: Yeah, it probably is. So put me in jail, I guess. I don't know. I'm just trying to survive my life and maintain whatever I got going on." (p. 54)

Exhibit U.

## G.   LaMarche's Property.

LaMarche owns a houseboat on Lake Union (2201 Fairview Avenue East, No.7, Seattle). This is the same address LaMarche provided gave when applying for disability in 1988. The current estimated value of the houseboat is $1.2 million. LaMarche's bank records reveal that LaMarche was using the RRB disability payments to pay the mortgage on the houseboat. Exhibit P (sample documents). Exhibit P.[8]

LaMarche owns a single-family home (1,974 square feet) on an acre of land located at 17302 Alpine Drive East, Enumclaw, Washington. The current assessed value is $540,000 with a $375,000 mortgage taken in 2012. The property is listed as a second home." Exhibit Q.

LaMarche owns 1.5 acres (undeveloped) located at 4557 Balsalt Street, The Dales, Oregon. The current estimated value is $67,000. Exhibit R.

Through Emerald City Charters, LaMarche owns two 70-foot sailboats: "Obsession" (a "wind sailing machine designed to race across the Atlantic") and "Neptune's Car" ("a downwind sled designed to race from California to Hawaii"). Exhibit S.

---

[8] Exhibit P includes a sample of LaMarche's Wells Fargo Bank records. Deposits from "US Treasury303 Xxrr Ret 040111 Paul D LaMarche" are disability annuity payments to LaMarche. Deposits to "Bill Pay WFHN – 708) are payments on the houseboat mortgage.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**H.      LaMarche's Payments of Expenses from Emerald City Charter Funds**

Financial records, obtained from Umpqua Bank, revealed a bank account for "Emerald City Charters/Let's Go Sailing," (Account No. xxxx3085). LaMarche appears to have paid personal expenses, to include monthly mortgage payments (FMNA), monthly Comcast cable fees, Scottrade Moneydirect transactions, as well as minor personal expenses such as groceries through this account. However, the obvious and ongoing personal expense being paid for out of the Emerald City Charter bank account are monthly mortgage payment of approximately $1,790.32 for LaMarche's property in Enumclaw, Washington (FMNA Loan Number xxxxxx1169). Payments for this personal home loan exceed the highest possible amount that LaMarche could earn before being required to report the income to the RRB.

| Year | Loan xxxxxx1169 |
|------|-----------------|
| 2015 | $16,113.24 |
| 2014 | $21,484.32 |
| 2013 | $21,484.32 |

Exhibit V.[9]

**I.      LaMarche's Reported Sailing Activity**

There are a dozen or so newspaper and blog articles detailing LaMarche's sailing activity, including races at sea. Exhibit W (sample articles).

**J.      Videos of LaMarche.**

Investigators located two videos on the internet (they have since been taken down) of LaMarche engaged in physical activity and sailing. Exhibits X & Y.

"Northwest Journeys" is an 8-minute video advertisement for Emerald City Charters. In this video, LaMarche talks about being a sailboat captain for 20 years. LaMarche is seen sailing in the Puget Sound in one of his large sailboats. LaMarche also

---

[9] Exhibit P includes a sample of Emerald City Charter bank records. Payments to "FMNA Loan xxxxxx1169" are for the Enumclaw house mortgage.

*United States v. LaMarche*, CR17-235-JLR
Government's Sentencing Memorandum - 12

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

talks about competitive racing (minute 4:10 & 4:40). LaMarche states that he started his company because "I would have to get a job otherwise" (minute 5:20) and "I started this business because I wanted to make every day as if I was on vacation" (minute 5:35) and he states that he has only missed a couple of days in 23 years" (minute 5:40). Exhibit X.

In the "Culture Trippers" video, LaMarche squires a woman from San Diego around Seattle. They sail, go flying in a seaplane, go around Lake Union on an electric boat, and then go paddle boarding on Green Lake. In this video, LaMarche says he likes to paddle board and can be seen doing yoga on a paddleboard (minute 1:50). Exhibit Y.

**K.   The Plea Agreement, Civil Settlement & Restitution Payment.**

On March 26, 2018, LaMarche pled guilty as charged in the Indictment to one count of *Wire Fraud* and one count of *Theft of Government Property*. Dkt. 21.

To avoid protracted litigation over the extent of LaMarche's injuries and whether and when they improved over time, as well as litigation as to exactly how much income LaMarche derived from Emerald City Charters, the parties agreed to calculate restitution and the loss amount, based on the years that Emerald City Charters actually reported income to the IRS that exceeded the threshold over which LaMarche was not entitled to a disability annuity. LaMarche acknowledged that income from Emerald City Charters exceeded these thresholds in 2006, 2009, 2011, 2013, 2014, 2015 and 2016. Plea Agreement, ¶ 7(f). Accordingly, LaMarche and the government agree that, based on calculations conducted by the RRB, LaMarche received disability annuity benefit overpayments in the amount of $177,369.26. Plea Agreement, ¶ 7(f). The parties agreed that this is the amount of total restitution. Plea Agreement, ¶ 13.

On the same day, LaMarche entered into a Civil Settlement Agreement with the United States in which he agreed to pay a civil penalty under the False Claims Act (31 U.S.C. §§ 3729, et seq.), as amended, of $177,369.26 (over and above the restitution amount). Exhibit Z.

As part of the Plea Agreement, the parties requested that the Court continue sentencing until after the summer sailing season in order to allow LaMarche an

*United States v. LaMarche*, CR17-235-JLR
Government's Sentencing Memorandum - 13

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

opportunity to earn money to pay off his restitution and civil settlement. Plea Agreement, ¶ 12. The Court agreed to continue sentencing until October 1, 2018.

The government has confirmed that LaMarche has now paid the entire restitution amount and civil settlement. This amount has been paid under the civil settlement agreement, but $177,369.26 of the amount will be returned to the RRB to cover the agreed restitution. There is no restitution owing. The government has moved to withdraw its forfeiture order and moved the court to lift the previously filed restraints on LaMarche's property. Dkt. 27.

### III.    STATUTORY PENALTIES

Count 1: *Wire Fraud,* imprisonment for up to twenty (20) years, a fine of up to two hundred and fifty thousand dollars ($250,000), a period of supervision following release from prison of up to three (3) years, and a special assessment of one hundred dollars ($100).

Counts 2: *Theft of Government Property*, imprisonment for up to ten (10) years, a fine of up to two hundred and fifty thousand dollars ($250,000), a period of supervision following release from prison of up to three (3) years, and a special assessment of one hundred dollars ($100).

### IV.    THE SENTENCING GUIDELINES CALCULATION

The parties and the Probation Officer agree that the following Sentencing Guidelines calculations apply to this case for both counts 1 and 2: Base Offense Level of 6 (USSG §2B1.1(A)(2)). The Base Offense Level is increased by 10 levels in light of a loss amount of between $150,000 and $250,000 (USSG §2B1.1(b)(1)(F)). Counts 1 and 2 are grouped together when calculating the Offense Level (USSG 3D1.2). Thus, the total Offense Level before acceptance of responsibility is 16. The Offense Level after acceptance of responsibility is 13. PSR ¶¶ 17-27.

LaMarche is Criminal History Category I. PSR¶ 30. Accordingly, the Guideline Range after acceptance of responsibility is 12 to 18 months. PSR¶ 56.

*United States v. LaMarche*, CR17-235-JLR
Government's Sentencing Memorandum - 14

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## V.    THE UNITED STATES SENTENCING RECOMMENDATION

The United States respectfully requests the Court sentence Paul D. LaMarche to fifteen (15) months imprisonment. The United States also asks this Court to order three (3) years of supervised release and impose the proposed conditions set forth in the presentence report.

LaMarche engaged in a decades-long scheme to retain a retirement disability annuity to which he had ceased to be entitled. This conduct is worthy of significant sanction, both as punishment for LaMarche himself, to promote respect for the law, and as a deterrent to others who might be faced with the same ethical scenario: comply with the rules or secretly pocket money without saying anything for years.

LaMarche understood the obligation he was under to report his employment, income and medical condition to the Railroad Retirement Board. At the same time, he undoubtedly realized that doing so would result in killing the goose that was laying golden eggs in the form of monthly disability annuity payments. Rather than take advantage of the multiple opportunities to come clean (presented at least once each year when he received the notices of his reporting obligations), LaMarche chose to remain silent.

LaMarche's responses to the questionnaires sent to him in 2015 by the Retirement Board make it abundantly clear make that he was seeking to hide activities that would reduce or eliminate his disability annuity. Rather than answer honestly, LaMarche repeatedly lied; claiming he was completely disabled, worked for less than one-hour a month as an advisor to Emerald City Charters, and received no income at all from the business. All of these claims were false. LaMarche was directly and actively involved in Emerald City Charters, sailing multiple days per week during the summer season. LaMarche's responses are not those of an innocent man; nor are they the responses of a man who legitimately believed was entitled to the annuity he was receiving. They are the responses of a man trying to hide guilt and conceal improperly obtained money.

*United States v. LaMarche*, CR17-235-JLR
Government's Sentencing Memorandum - 15

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

What makes LaMarche's conduct over the past two decades particularly egregious is that, while he was refusing to acknowledge his obligations to the Railroad Retirement Board, or actively lying about them, at the same time he was providing the Coast Guard a completely different story in order to maintain his captain's license. In 1999 LaMarche told the Coast Guard he had "no significant medical history." In 2004, he stated that he had "No impaired range of motion. No impaired balance/coordination". In 2009, he repeated the same claim. In 2014, LaMarche informed the Coast Guard he had "No Medical Conditions." In conjunction with these claims, LaMarche submitted medical exams in which he reported being in basically perfect health. These assertions allowed LaMarche to continue to sail and to operate Emerald City Charters on a daily basis.

One thing is certain: LaMarche's statements to the Railroad Board and to the Coast Guard cannot both be true. LaMarche lied to live the life he wanted to live.

Ultimately, the Railroad Retirement Disability Earnings Act relies on the honesty of the recipients of disability annuities in order to function fairly and properly. In this regard, it is no different than social security, Medicaid, or the payment of taxes. All these government programs presuppose honesty on the part of the reporting party. It is certainly possible to lie when participating in these programs, but everyone understands that there are serious criminal consequences when doing so. The Railroad Retirement Disability Earnings Act is no different. LaMarche elected to cheat this benefit program and it is reasonable and appropriate that he suffer a consequence for doing so.

Considering the facts of this case, the government submits that a Guideline Range sentence is appropriate. The government strongly disagrees with LaMarche's request for no term of incarceration. The government also strongly disagrees with the Probation Office's recommendation that a term of home confinement (on a houseboat on Lake Union) is a sufficient form of punishment for LaMarche's criminal activity. The government respectfully requests that the Court impose a term of incarceration of fifteen (15) months, a mid-range Guideline Sentence.

*United States v. LaMarche*, CR17-235-JLR
Government's Sentencing Memorandum - 16

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

In the following paragraphs, the government will briefly address several issues it anticipates the defense will raise in arguing that a probationary sentence is appropriate.

First, the defense will likely emphasize that LaMarche has paid off both his restitution and civil settlement obligations. The government agrees this is a positive aspect of LaMarche's case. At the same time, the government agreed to a continuance of the sentencing date in order to allow LaMarche to run Emerald City Charters over the 2018 summer sailing season. This continuance was anticipated in the plea agreement in order to allow LaMarche the opportunity to pay off his financial obligations. LaMarche did so and has been able to pay off $324,738.24 in restitution and civil penalties.

More basically, the government rejects the suggestion that simply because an individual can pay required financial obligations that no further punishment is warranted. That rule would lead to the conclusion that criminals who are wealthy should suffer less punishment than those who are not. It is unreasonable to suggest that someone like LaMarche, who had resources at his disposal, should suffer less punishment than an individual who engages in theft out of direct and compelling personal need and is unable to pay a restitution.

Second, the defense may emphasize that LaMarche had a difficult childhood. This argument, for an individual in LaMarche's position, should carry no weight at all.[10] LaMarche is 67 years old. He has served in the military as a Marine. He has worked on the railroad. He has run his own business. There is nothing whatsoever in LaMarche's background to suggest he did not know right from wrong. Nor is there anything in his childhood – however difficult it may have been – to suggest that LaMarche was

---

[10] The government agrees that a difficult childhood upbringing might be as relevant when the Court is sentencing a young adult, perhaps driven to criminal activity by poverty or environment. This however is does not describe LaMarche. The government understands that defense counsel may have administered a "childhood experiences inventory" to LaMarche, but has not seen the results of this testing.  The government will let the Court determine the relevance of any psychological tests given to LaMarche, and scored, by defense counsel.

*United States v. LaMarche*, CR17-235-JLR
Government's Sentencing Memorandum - 17

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

compelled to embezzle money. As the Probation Officer recognizes, LaMarche's actions were driven by greed, not circumstance. LaMarche's claim in this regard does a disservice to all those individuals who faced a similarly difficult (or even more traumatic) childhood and did not go on to commit criminal activity.

Third, defense counsel will likely emphasize that LaMarche has no criminal history and does not pose a danger to the community. This does not mean that a sanction involving incarceration – as punishment and deterrent – is not appropriate. Indeed, the government recommends, and courts impose, a term of incarceration in many cases where the defendant has no criminal history. By the way of just one example, in the case of *United States v. Habtom*, CR18-085-RAJ, the defendant engaged in bank fraud by using fraudulent credit cards to purchase gift cards. The government had provable losses in the amount of approximately $4,000, although suspected losses may have been in the realm of $25,000. The defendant was 21 years old and has no criminal history. He was born in Somalia, moved here as a refugee as a child. The parties have agreed on a sentence of 27 months (driven in part by the mandatory term of 24 months for the aggravated identity theft charges). While sentencing has not yet taken place, if a term of incarceration for Habtom is appropriate, it is difficult to see why or how LaMarche's case is different.

Fourth, the defense may contend that no term of incarceration is appropriate because LaMarche has lived a "pro-social" life and has the support of friends and acquaintances. But the fact that LaMarche has lived a pro-social life, has been able to develop his business, and been able to make friends while sailing and travelling the world, is fueled in part by his ongoing receipt of the disability annuity to which he was not entitled. Exactly how much was fueled by that annuity is unknowable. Did the annuity allow him to survive the lean years when the business was beginning? To fund boat repairs or pay the bills? If Emerald City Charters was the close-to-the-bone enterprise that LaMarche contends it was, the disability annuity could not have hurt. For LaMarche to now claim that he should not be punished because he is "pro-social" is in

*United States v. LaMarche*, CR17-235-JLR
Government's Sentencing Memorandum - 18

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

essence a claim that he should be rewarded for successfully deceiving the Railroad Board for many years.

Fifth, the defense may also claim that LaMarche might lose his business if he is sent to prison. This seems highly speculative. But even if it is a real possibility, it is no different than the consequences that face any individual who engages in criminal activity while running a business.

Sixth, the defense may assert that LaMarche has been punished enough because his captain's license will be suspended for nine months as a result of his conviction. Again, this is the sort of collateral consequence that often flows from criminal activity. It is not an alternative to criminal punishment.

Finally, the defense may suggest that LaMarche's age (he is 67 years old) and/or health mitigates against a prison sentence. The government respectfully disagrees. As an initial matter, a defendant's medical history rarely qualifies for a departure under the Guidelines. *See* USSG § 5H1.4 ("*extraordinary* physical impairment may be a reason to depart downward") (emphasis added).  From one perspective, this is simply an argument that LaMarche should not be sentenced to incarceration because he managed to get away with his fraudulent activity for so long. In any event, LaMarche appears to be healthy – certainly healthy enough to run and operate a charter sailing boat business – and his age alone should not preclude a period of incarceration. Indeed, courts in this district have sentenced older defendants to periods of incarceration in fraud cases.[11]

In sum, LaMarche has presented no compelling reasons – certainly no reasons that are exceptionally different than most defendants who appear for sentencing in federal court – that might justify a sentence below the Sentencing Guideline Range.  LaMarche has admitted that he knowingly received disability annuity benefit overpayments in the

---

[11] For example, *United States v. Hazelrigg*, CR13-329-TSZ (67-year-old defendant sentenced to 54-months incarceration for two-counts of evading tax payments).

*United States v. LaMarche*, CR17-235-JLR
Government's Sentencing Memorandum - 19

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

amount of $177,369.26. LaMarche failed to comply with the minimal reporting requirements that would have allowed the Railroad Board to investigate in a timely manner whether he was entitled to continue to receive the disability annuity. When given a clear and direct opportunity to tell the truth about the status of his disability, LaMarche instead lied. Finally, LaMarche benefited financially over a period of years from this fraud, while growing his business and living an enviable lifestyle. A prison sentence of fifteen (15) months, followed by three years of supervised release, is appropriate.

## VI.  SELF-SURRENDER ON OCTOBER 2, 2018

On March 26, 2018, LaMarche pled guilty as charged in the Indictment. Dkt. 21. Sentencing was originally scheduled for June 25, 2018. Dkt.19. LaMarche had previously indicated that he would request a continuance of the sentencing date until after the "sailing season" so he could earn money to pay of his restitution obligation. Anticipating this request, the parties agreed as follows in the Plea Agreement:

> a. After the plea hearing (at which a sentencing date will be set), the parties will jointly request that the sentencing be set over until no later than Tuesday, October 2, 2018.
>
> b. In return, Mr. LaMarche will agree that, if the sentencing date is continued and a custodial sentence is imposed, he will self-surrender to the Federal Detention Center by 2:00 PM on the day following sentencing (this requirement to be included in the final judgment and sentence). The government will not oppose Mr. LaMarche's request to self-surrender unless Mr. LaMarche has violated the terms of his appearance bond.
>
> c. Mr. LaMarche understands that these are non-binding requests by the parties and that the Court has the ultimate authority to set the sentencing date and to determine whether Mr. LaMarche is allowed to self-surrender.

PSR ¶ 12.

Accordingly, if the Court imposes a sentence of incarceration, the government respectfully requests that LaMarche be directed to self-surrender at the Seatac Federal Detention Center on October 2, 2018 by 2:00 PM (the day after sentencing).

*United States v. LaMarche*, CR17-235-JLR
Government's Sentencing Memorandum - 20

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# VII.   CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court sentence LaMarche to fifteen (15) months imprisonment. The United States also asks this Court to order three (3) years of supervised release and impose the proposed conditions set forth in the presentence report.

DATED this 24th day of September, 2018.


Respectfully submitted,

ANNETTE L.HAYES
United States Attorney

s/ STEPHEN HOBBS
STEPHEN HOBBS
Assistant United States Attorney
United States Attorney's Office
700 Stewart, Suite 5220
Seattle, WA 98101-3903
Telephone:   206-553-4301
Fax:            206-553-0755
E-mail:       stephen.p.hobbs@usdoj.gov

*United States v. LaMarche*, CR17-235-JLR
Government's Sentencing Memorandum - 21

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 24, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorney(s) of record for the defendant(s).

*s/ Matthew Smith*
MATTHEW SMITH
Legal Assistant
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: 206-553-8459
Fax: 206-553-0755
E-mail: Matthew.Smith7@usdoj.gov

*United States v. LaMarche*, CR17-235-JLR
Government's Sentencing Memorandum - 22

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970